IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

ALISHA N. STRICKLAND, )
)
Plaintiff, )
)
v. ) Case No. CIV-10-272-KEW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

**OPINION AND ORDER**

Plaintiff Alisha N. Strickland (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on November 21, 1969 and was 38 years old at the time of the ALJ's decision. Claimant completed her high school education and some college. Claimant worked in the past as a nurse's aide. Claimant alleges an inability to work beginning June 1, 2004 due to limitations arising from bipolar disorder,

depression, anxiety, agoraphobia, and back problems.

## Procedural History

On June 28, 2006, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On September 5, 2008, an administrative hearing was held before ALJ Richard J. Kallsnick in Tulsa, Oklahoma. On October 1, 2008, the ALJ issued an unfavorable decision on Claimant's application. On May 25, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in failing to: (1) ask a proper hypothetical question of the vocational expert at step five; (2) properly consider all of the medical source evidence; and

4

(3) engage in a proper credibility evaluation.

## Step Five Analysis

Claimant contends the ALJ failed to properly question the vocational expert ("VE") during the hearing. She finds error in the ALJ's failure to inform the VE of the "seven strength requirements" in his hypothetical questioning. She also asserts the ALJ failed to ask the VE if her testimony was deviated from the *Dictionary of Occupational Titles* ("DOT"). Claimant also contends the ALJ ignored her impairments, be they severe or not, of low back pain and headaches stemming from head trauma. Claimant also takes issue with the jobs the VE identified she could perform, contending that it was never determined that she could stoop, kneel, or crouch - something all of the identified jobs require.

In his questioning of the VE, the ALJ informed the VE of Claimant's educational status and ability to perform at all exertional levels. The ALJ inquired as to whether the VE was familiar with all of the elements of those exertional levels to which the VE responded in the affirmative. The ALJ then informed the VE that she has been diagnosed with affective disorder and personality disorder, limiting her to simple tasks with routine supervision. She can relate to coworkers and supervisors on a superficial basis but could not relate to the general public. She

5

can adapt to her work situation. She can remain attentive and responsive in a work setting and carry out assignments satisfactorily.

The VE testified Claimant could not perform her past relevant work because she had to deal with the public. The ALJ inquired as to any jobs Claimant could perform. The VE identified the medium work of janitorial work, medium store clerk, light exertion food preparation worker, and sedentary assembly work. The ALJ then asked the VE if Claimant could perform any of her past work if Claimant's testimony as to her limitations, both mentally and physically, were taken as fully credible. The VE testified Claimant could not perform any work. (Tr. 48-50).

A vocational expert's testimony can provide a proper basis for an ALJ's determination where the claimant's impairments are reflected adequately in the hypothetical inquiries to the expert. Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993). The ALJ is required to accept and include in the hypothetical question only those limitations supported by the record. Shepherd v. Apfel, 184 F.3d 1196, 1203 (10th Cir. 1999). However, "'[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.'" Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991) quoting Ekeland v. Bowen, 899 F.2d 719,

724 (8th Cir. 1990). This Court finds no authority for Claimant's proposition that the seven strength requirements be specifically stated in the hypothetical. The VE stated she understood the requirements. Nothing in the law requires she undergo a quiz to determine if she is being truthful. Additionally, Claimant states the ALJ failed to inquire as to whether the VE's testimony deviated from the DOT. This is not reversible error. The requirement is actually that the ALJ "elicit sufficient vocational evidence for [the] court to determine whether there is a conflict." <u>Carpenter v. Astrue</u>, 537 F.3d 1264, 1270-71 (10th Cir. 2008)(citation omitted). The VE did make errors in her testimony in this case. She identified janitorial work as "medium" when in fact it is heavy work. DOT #381.687-014. (Tr. 49). Claimant suggests this work requires the ability to stoop, kneel, or crouch and the ALJ did not specifically find Claimant could perform these functions. Similarly, Claimant states the job identified by the VE of medium store clerk requires the ability to stoop, occasionally kneel, or crouch. Nothing in the record suggests Claimant is limited in these functions. The VE also misidentified the assembly job as sedentary work when it is, in fact, light work. DOT #732.687-014. Since the ALJ found Claimant could perform at all exertional levels, this Court cannot find the error in the answers provided by the VE is prejudicial. It is worth noting that the ALJ did not

identify the exertional level at which each of the jobs were classified in the DOT in his decision. The availability and number of each of these jobs does not change with the erroneous classification. No error is attributed to the ALJ's decision in this regard.

## Medical Source Evidence

Claimant also contends the ALJ did not explain the weight provided to the opinions of the state agency physicians. She further asserts that these physicians' opinions are inconsistent in their findings on Claimant's limitations. On October 30, 2006, Dr. Cynthia Kampschaefer completed a Psychiatric Review Technique on Claimant. She found Claimant suffered from Affective Disorders and Personality Disorders. (Tr. 407). The Affective Disorders consisted of anger/depression due to failing hysteroid coping mechanisms. (Tr. 410). The Personality Disorders included intense and unstable interpersonal relationships and impulsive and damaging behavior. (Tr. 414). Dr. Kampschaefer found Claimant was moderately restricted in her activities of daily living, had difficulties in maintaining concentration, persistence, or pace, and had two or more episodes of decompensation of extended duration. She also found Claimant had marked limitations in her difficulties in maintaining social functioning. (Tr. 417).

Dr. Kampschaefer also completed a Mental Residual Functional Capacity Assessment form on Claimant. She concluded Claimant was markedly limited in her ability to understand and remember detailed instructions, ability to carry out detailed instructions, and ability to interact appropriately with the general public. (Tr. 421-22). Dr. Kampschaefer concluded Claimant could perform simple tasks with routine supervision, can relate to supervisors and peers on a superficial work basis, cannot relate to the general public, and can adapt to a work situation. (Tr. 423). Although Claimant is correct that there appears to be an inherent conflict between the finding on the PRT of moderate limitation in concentration, persistence, or pace with no limitation in the Mental RFC assessment, the ALJ determined Claimant had a moderate limitation such that the conflict is of no concern in the ultimate decision. Claimant appears to argue the ALJ should have discounted the consultant's opinion altogether with the presence of this conflict. This is not required and no error will be found in the ALJ's acceptance of the reviewer's statements.

The ALJ also relied upon the Psychological Evaluation of Dr. Minor W. Gordon dated September 29, 2006. Dr. Gordon examined Claimant, noting she was taking various psychotropic medications due to her bipolar disorder, anxiety, depression and borderline personality disorder. (Tr. 403). Dr. Gordon found Claimant to be

attentive and alert with good eye contact but affectively, Claimant's mood was one of anger and depression. She had difficulties with energy and sleep. Her cognitive processes were grossly average. She had difficulty communicating comfortably in a social context as well as due to her anger. Otherwise, Claimant was found to be able to pass judgment in the work situation, avoid common danger, and maintain personal hygiene. (Tr. 404). Dr. Gordon concluded Claimant would have difficulty communicating with the general public but could communicate with coworkers and supervisors for work purposes. Claimant could be expected to perform some type of routine and repetitive task on a regular basis. Dr. Gordon diagnosed Claimant at Axis I: Problems with anger and depression, secondary to failing hysteroid coping mechanisms; Axis II: Histrionic and borderline personality traits; Axis III: Iatrogenic benzodiazepine dependence; Axis IV: Difficulty communicating comfortably in a social circumstance secondary to problems with anger; Axis V: GAF of 65. (Tr. 405).

After reviewing the consultative reports relied upon by the ALJ, this Court cannot conclude the ALJ and the reviewers failed to recognize the severity of Claimant's condition or the limitations they might impose. This Court finds no inconsistency in the ALJ's finding of no limitations on Claimant's ability to complete a normal workday and workweek and his finding of moderate limitation

of concentration, persistence, or pace argued by Claimant.

Claimant also contends the ALJ failed to adequately consider Claimant's low GAF scores. While the GAF scores were low at one point, the ALJ relied upon the consultative examiner's finding of a 65 in 2006. The ALJ was not obligated to discuss the earlier findings of a lower GAF.

### Credibility Determination

The ALJ concluded Claimant's testimony on limitation was not entirely credible. Based upon Claimant's improvement in her mental condition and the findings of the consultative examiners, the ALJ found Claimant's testimony was suspect.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of

any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ sufficiently tied his findings on credibility to the objective medical record. Accordingly, no error is found in his credibility determination.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

DATED this 26th day of September, 2011.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE